# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Buckles v. Hopkins Goldenberg, P.C., 2012 IL App (5th) 100432**

---

| | |
|---|---|
| Appellate Court Caption | JUDY BUCKLES, as Special Administrator of the Estate of Charles Buckles, Deceased, Personal Representative and Individually on Her Own Behalf, Plaintiff-Appellant, v. HOPKINS GOLDENBERG, P.C., JOHN SIMMONS, and THE SIMMONS LAW FIRM, LLC, Defendants-Appellees. |
| District & No. | Fifth District<br>Docket No. 5-10-0432 |
| Filed | March 26, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from orders entered in plaintiff's legal malpractice actions against the law firms that represented her in connection with her claims alleging that her husband's death was caused by exposure to asbestos, the appellate court held that plaintiff waived her contentions that the trial court erred in entering summary judgment for the law firm that initially represented her as to a settlement with one defendant in the underlying action and that summary judgment was improperly entered for plaintiff's successor counsel as to the successor's conduct after plaintiff discharged her first attorneys, since she did not raise any arguments of error in her brief, but the appellate court reversed the summary judgment for plaintiff's initial counsel on the *respondeat superior* claim that her successor counsel was negligent while employed by her initial counsel and barring her from pursuing her initial counsel for any conduct other than that connected with relinquishing her file to the successor counsel and collecting settlements made while the initial counsel was representing plaintiff. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 06-L-588; the Hon. Barbara L. Crowder, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Roy C. Dripps, of Armbruster, Dripps, Winterscheidt & Blotevogel, LLC, of Alton, for appellant. |
| | A.J. Bronsky, of Brown & James, P.C., of St. Louis, Missouri, Daniel F. Konicek and Michael J. Corsi, both of Konicek & Dillon, P.C., of Geneva, and John T. Papa, of Callis, Papa, Hale, Szewczyk & Danzinger, P.C., of Granite City, for appellees. |
| Panel | JUSTICE SPOMER delivered the judgment of the court, with opinion. Justices Stewart and Wexstten concurred in the judgment and opinion. |

## OPINION

¶ 1    The plaintiff, Judy Buckles, as special administrator of the estate of Charles Buckles, deceased, personal representative and individually on her own behalf, appeals, pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), the following orders entered by the circuit court of Madison County on the plaintiff's complaint for legal malpractice against the defendants, Hopkins Goldenberg, P.C. (the Hopkins firm), William Miller,[1] John Simmons, and the Simmons Law Firm, LLC (Simmons): (1) the January 30, 2009, order granting a summary judgment for Simmons; (2) the January 22, 2010, order granting a partial summary judgment for the Hopkins firm on the issue of whether the Hopkins firm's settlement of the plaintiff's claim against Pittsburgh Corning in the underlying lawsuit was adequate; and (3) the June 18, 2010, order granting the Hopkins firm's motion to reconsider and granting a summary judgment for the Hopkins firm on all of the plaintiff's claims against the Hopkins firm "other than those related to the duty that come[s] with relinquishing the file [to Simmons] and then collecting settlements." For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

_____

[1]William Miller was dismissed as a defendant prior to the entry of the orders at issue and is not a party to this appeal.

¶ 2 FACTS

¶ 3    On July 10, 2006, the plaintiff filed a legal malpractice complaint against the defendants in the circuit court of Madison County.[2] The complaint alleged the following facts. The plaintiff's decedent, Charles Buckles, was a boilermaker in various facilities throughout southern Illinois between 1967 and 1995. During his time as a boilermaker, he was exposed to various asbestos-containing products which were manufactured, distributed, and/or installed by various entities who knew or should have known that such products were toxic and could cause mesothelioma. According to the complaint, Mr. Buckles died of mesothelioma as a result of the negligence of these various entities.

¶ 4    In count I, the complaint alleged that the plaintiff hired the Hopkins firm to represent her and the estate of Charles Buckles to recover damages from the asbestos exposure caused by the various entities. The complaint alleged that the Hopkins firm breached its duty to the plaintiff in several different respects. First, the complaint alleged that the Hopkins firm had several secret agreements with potential defendants, including W.R. Grace and Owens Corning, to classify and settle claims against its various clients for predetermined figures. The complaint alleged that these predetermined figures (settlements) bore no relationship to the loss the plaintiff suffered and that the Hopkins firm did not disclose these arrangements to the plaintiff.

¶ 5    Second, the complaint alleged that the Hopkins firm hired an employee with a felonious criminal history and no license to practice law to value cases and provide legal advice to the plaintiff with regard to settlements. Third, the complaint alleged that the Hopkins firm failed to file suit within the statute of limitations against one potential defendant, W.R. Grace. In addition, the complaint alleged that the Hopkins firm failed to collect settlements from the various entities in a timely manner before said entities filed bankruptcy, made improper and excessive cost deductions from the settlement proceeds, unilaterally allocated the proceeds of group settlements to the plaintiff without her knowledge or consent, and failed to disclose to the plaintiff the terms of its fee-splitting arrangements with a national asbestos firm, Ness Motley, LLC. According to count I, these breaches of the standard of care by the Hopkins firm caused the plaintiff to recover less than the full amount of her damages.

¶ 6    Count II of the complaint was directed against William Miller and was dismissed prior to the orders at issue in this appeal. Count III of the complaint alleged by way of background that Simmons, who had been employed by the Hopkins firm from 1997 and who had performed some work on the plaintiff's case while there, left the Hopkins firm in July of 1999. On July 26, 1999, the plaintiff discharged the Hopkins firm and hired Simmons to represent her on the claims against any remaining potential defendants. The Hopkins firm and Simmons agreed to split the plaintiff's claims, with the Hopkins firm pursuing collection of settlements already reached and Simmons pursuing any remaining potential defendants. Count III alleged that Simmons was negligent in the manner in which he pursued the remaining claims, contributing also to the plaintiff's deficient recovery.

_____

[2]The plaintiff previously filed suit on January 3, 2001, but later voluntarily dismissed that action.

¶ 7        On October 10, 2007, Simmons filed a motion for a summary judgment on the basis that the deadline for the disclosure of experts had passed and that the plaintiff had put forth no expert to testify that he breached the standard of care in pursuing the plaintiff's remaining claims after 1999. On January 30, 2009, the circuit court granted Simmons' motion for a summary judgment.

¶ 8        On July 22, 2009, the Hopkins firm filed a motion for a partial summary judgment on the issue of the adequacy of its settlement of the plaintiff's underlying claim against Pittsburgh Corning for $750,000. On January 22, 2010, the circuit court granted the Hopkins firm's motion for a partial summary judgment as to this issue, holding that the plaintiff's counsel had made binding judicial admissions as to the adequacy of this settlement amount. On February 4, 2010, the Hopkins firm filed another motion for a summary judgment, arguing that because the plaintiff had claims against viable defendants at the time she discharged the Hopkins firm, any alleged breaches of duty by the Hopkins firm as to some of the claims were not a proximate cause of the plaintiff's damages as a matter of law. In addition, the Hopkins firm argued that the circuit court's order granting a summary judgment for Simmons precluded the plaintiff from pursuing any claims against the Hopkins firm on the basis that Simmons was negligent during his employment with the Hopkins firm.

¶ 9        On March 2, 2010, the circuit court entered an order denying the Hopkins firm's February 4, 2010, motion for a summary judgment. However, on May 28, 2010, the Hopkins firm filed a motion to reconsider that ruling. On June 18, 2010, the circuit court entered an order granting a partial summary judgment to the Hopkins firm on the eve of trial. First, the circuit court granted a summary judgment to the Hopkins firm "based on any evidence or claim of Simmons as an agent of [the Hopkins firm] while he was in their employ." Second, the circuit court found that, due to the plaintiff's termination of the Hopkins firm in 1999, the plaintiff "cannot maintain any claims against [the Hopkins firm] other than those related to the duty that come[s] with relinquishing the file and then collecting settlements."

¶ 10        On August 6, 2010, the circuit court granted the plaintiff's motion for a special finding, pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), that there was no just reason for delay or enforcement of the orders of the circuit court granting a summary judgment for Simmons and a partial summary judgment for the Hopkins firm.[3] On September 2, 2010, and September 7, 2010, the plaintiff filed timely notices of appeal from all of these orders.

¶ 11                                ANALYSIS

¶ 12        Because the plaintiff appeals from orders granting summary judgments in favor of Simmons and the Hopkins firm, our standard of review is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). A summary judgment should

---

[3]We note that on the same day, the circuit court entered a separate order certifying questions for interlocutory appeal pursuant to Illinois Supreme Court Rule 308(a) (eff. Feb. 26, 2010). However, because the plaintiff did not file an application for leave to appeal with this court as required by Rule 308(b), the certified questions are not properly before this court.

only be granted when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Id.* Only when the movant's right to judgment is clear and free from doubt is a summary judgment appropriate, as it is a drastic measure. *Id.* Where reasonable persons could draw different inferences from undisputed facts, a summary judgment is improper. *Id.* With these well-established standards in mind, we turn to each of the orders on appeal.

¶ 13    First, the plaintiff appeals the January 30, 2009, order granting a summary judgment for Simmons. Simmons' motion for a summary judgment was directed toward count III of the complaint, which alleged that Simmons was negligent in his handling of the plaintiff's remaining claims after she discharged the Hopkins firm in 1999. In her brief, the plaintiff does not contest the grant of Simmons' motion for a summary judgment as it relates to Simmons' conduct after 1999. The plaintiff only challenges the order granting a summary judgment in favor of Simmons to the extent that it could be interpreted to preclude the plaintiff from pursuing the Hopkins firm in count I on a *respondeat superior* theory for any conduct of Simmons while at the Hopkins firm prior to 1999. As further discussed below, we decline to interpret the January 30, 2009, order in this manner. Having reviewed the record, it is clear to us that this order was intended to grant a summary judgment for Simmons on count III of the complaint and in no way relates to the allegations of count I. As such, the plaintiff has waived any argument that the circuit court erred in granting a summary judgment to Simmons on count III, as she failed to raise any argument of error in her brief. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (points not argued in appellant's brief are waived). For these reasons, we affirm the circuit court's January 30, 2009, order granting a summary judgment in favor of Simmons.

¶ 14    We must reach the same result with regard to the circuit court's January 22, 2010, order granting a partial summary judgment to the Hopkins firm with regard to the issue of the adequacy of the Hopkins firm's settlement with Pittsburgh Corning for $750,000. Although the plaintiff lists this order in her notice of appeal, her brief contains no argument relating to the propriety of that order. Accordingly, we find that the plaintiff has waived any claim of error as to that order. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). We affirm the January 22, 2010, order granting a partial summary judgment to the Hopkins firm.

¶ 15    Finally, we turn to the June 18, 2010, order, which represents the crux of the plaintiff's appeal. In this order, the circuit court granted a partial summary judgment to the Hopkins firm on what appears to be two bases. First, the circuit court granted a summary judgment for the Hopkins firm on any claim that Simmons was negligent while in the Hopkins firm's employ. Although the circuit court does not specify its reasoning, it appears that the circuit court made a finding that its previous summary judgment for Simmons had a *res judicata* effect on any *respondeat superior* claim against the Hopkins firm based on any conduct of Simmons before he left the Hopkins firm in 1999 and was hired by the plaintiff to pursue any then remaining potential defendants. Second, the circuit court found that due to the plaintiff's termination of the Hopkins firm in 1999, she could not pursue the Hopkins firm for any conduct other than that connected with relinquishing the file to Simmons and collecting the settlements that it had made while representing the plaintiff. We will address each of these rulings in turn.

¶ 16    We begin with the circuit court's ruling that foreclosed the plaintiff from making any *respondeat superior* claim against the Hopkins firm on the basis of Simmons' pre-1999 conduct by virtue of the circuit court's previous summary judgment in favor of Simmons. In order to address the propriety of that portion of the June 18, 2010, order, we must examine the allegations of the complaint against the Hopkins firm and apply the elements of *res judicata* to those allegations as they relate to the circuit court's previous order entering a summary judgment in favor of Simmons. Pursuant to the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same claim, demand, or cause of action. *Fried v. Polk Brothers, Inc.*, 190 Ill. App. 3d 871, 877 (1989) (citing *Kinzer v. City of Chicago*, 128 Ill. 2d 437, 446 (1989)). The public policy behind this doctrine is to provide for finality in litigation and promote judicial economy. *Id.* (citing *Spiller v. Continental Tube Co.*, 95 Ill. 2d 423, 432 (1983)). *Res judicata* requires an identity of parties, subject matter, and causes of action. *Id.* In order for two causes of action to be considered the same for *res judicata* purposes, they must be based on the same facts or the evidence necessary to sustain the second cause must have been sufficient to sustain the first cause. *Id.* at 877-78.

¶ 17    Here, Simmons was named as an individual defendant in count III of the complaint. Although count III of the complaint alleges, by way of background, that Simmons was employed by the Hopkins firm from 1997 until 1999 and performed some work on the plaintiff's case during that time, the substantive allegations in count III are directed toward Simmons' conduct while representing the plaintiff in pursuing potential remaining defendants after he left the Hopkins firm in 1999.[4] Similarly, Simmons' motion for a summary judgment focused on the lack of evidence that he individually breached the standard of care in representing the plaintiff after 1999. Accordingly, we construe the circuit court's order granting a summary judgment in favor of Simmons as the entry of a summary judgment on count III of the complaint.

¶ 18    All of the allegations against the Hopkins firm are set forth in count I of the complaint. As a professional corporation, the Hopkins firm could only act through the acts of its agents and employees. See *Zahl v. Krupa*, 399 Ill. App. 3d 993, 1020 (2010) (corporations are subject to vicarious liability for torts committed by their agents and employees). The allegations of count I are directed toward the conduct of the Hopkins firm's agents and employees prior to 1999 when the Hopkins firm was discharged, and Simmons was one of its employees during that time. However, as explained above, the summary judgment entered in favor of Simmons individually was for his conduct stated in count III, which occurred after 1999. Because these two counts are not based on the same facts, are directed toward different parties, and contain different subject matter, we find that the summary judgment entered in favor of Simmons has no *res judicata* effect whatsoever on count I, which states a cause of action for the conduct of the Hopkins firm's employees prior to 1999, which may include the

---

[4]Although we recognize that the prayer for relief in count III requests that the court enter judgment against the Hopkins firm, an examination of the allegations of count III leads us to conclude that this is a scrivener's error, as was represented by the plaintiff's counsel at oral argument.

conduct of Simmons while in the Hopkins firm's employ. Accordingly, we must reverse that portion of the June 18, 2010, order granting a partial summary judgment in favor of the Hopkins firm.

¶ 19     We now turn to the second basis for the entry of the partial summary judgment in favor of the Hopkins firm in the June 18, 2010, order: that portion of the order which held that due to the plaintiff's termination of the Hopkins firm in 1999, the plaintiff cannot pursue the Hopkins firm for any conduct other than that connected with relinquishing the file to Simmons and collecting the settlements that it had made while representing the plaintiff. It appears that in making this ruling, the circuit court accepted the Hopkins firm's argument that because viable potential defendants remained for the plaintiff to pursue when she discharged the Hopkins firm and hired Simmons, the Hopkins firm's prior conduct in settling with any other defendants could not be the proximate cause of the plaintiff's damages because Simmons could have taken any of those defendants to trial and recovered all of the plaintiff's damages from any one of them. In its pleadings below, the Hopkins firm makes a similar argument with regard to the plaintiff's settlement with Pittsburgh Corning for $750,000, the adequacy of which will not be disputed at trial based on the circuit court's previous order granting a summary judgment on that issue, as explained above. With regard to that settlement, the Hopkins firm argues that because the plaintiff could have recovered all of the underlying damages had she chosen to take Pittsburgh Corning to trial, none of the Hopkins firm's other conduct could have been a proximate cause of her damages. We begin our analysis of this issue with this well-established statement regarding proximate cause in the context of a legal malpractice action:

> " ' "The issue of proximate causation in a legal malpractice setting is generally considered a factual issue to be decided by the trier of fact." ' [Citation.] Such a determination is to be made by the trier of fact after consideration of all of the evidence and attending circumstances. [Citations.] The issue of proximate causation should never be decided as a matter of law where reasonable persons could reach different results. [Citation.]" *Nettleton v. Stogsdill*, 387 Ill. App. 3d 743, 753 (2008) (quoting *Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195, 210 (2006), quoting *Renshaw v. Black*, 299 Ill. App. 3d 412, 417-18 (1998)).

¶ 20     Based on the record before us, we find that there are questions of material fact surrounding the issue of whether any of the Hopkins firm's conduct outside of the Pittsburgh Corning settlement and prior to their relinquishing the file to Simmons was a proximate cause of the plaintiff recovering less than the full value of her damages for her husband's mesothelioma. There are simply not enough facts in the record for this court to determine as a matter of law which of the underlying defendants should have been the "target" defendants and which defendants the plaintiff could have successfully pursued for all of her damages. The resolution of this issue will depend on evidence of the following with regard to the potential defendants: (1) the role each defendant played, whether manufacturer, installer, or premises owner; (2) the level of the plaintiff's decedent's exposure to the defendants' products or locations; and (3) the frequency of such exposure. See *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 359 (1992).

¶ 21     If the plaintiff presents evidence that the defendants which the Hopkins firm was

responsible for pursuing were the "target" defendants based on the foregoing factors, and that the defendants which Simmons was responsible for pursuing were merely peripheral defendants or would have prevailed at trial, a reasonable trier of fact may find that the Hopkins firm breached the standard of care in resolving the plaintiff's causes of action against these defendants and proximately caused the plaintiff's damages. In addition, depending on the evidence at trial, a reasonable trier of fact might find that despite the Pittsburgh Corning settlement, but for the conduct of the Hopkins firm in settling some of the claims against the other defendants, the plaintiff would have realized a greater recovery. Based on the record before us, we are unable to make these factual determinations. Accordingly, we find that the circuit court erred in foreclosing the plaintiff the opportunity to demonstrate proximate cause at trial.

¶ 22                                         CONCLUSION

¶ 23    For the foregoing reasons, we affirm the January 30, 2009, order granting a summary judgment in favor of Simmons and the January 22, 2010, order granting a partial summary judgment in favor of the Hopkins firm on the issue of the adequacy of the Pittsburgh Corning settlement. We reverse the June 18, 2010, order granting a partial summary judgment in favor of the Hopkins firm in its entirety and remand for further proceedings.

¶ 24    Affirmed in part and reversed in part; cause remanded.